Denio, C. J.
I find no difficulty in saying that the plaintiffs were the Iona fide holders for value of the checks in question. The jury have found that fact upon sufficient evidence, and a correct statement of the law by the judge. The obligation incurred by bankers who certify the checks of their dealers in the manner in which the checks in question were certified is, that they will retaimthe amount for which the check is drawn, and which, by the certificate, they admit they have in hand to the drawer’s credit, to meet the check when presented, and that they will pay it to the holder on demand. It would be regular for the banker to charge it immediately to the drawer’s general account. If from motives of convenience he chooses to enter it upon a special account, as is shown to have been the practice of the defendants in respect to certified checks, the effect is the same. The dealer has availed himself of his deposit with the bank to the amount of the certified check, and cannot again claim it without returning the check to the banker. The delay in presenting it for payment is of no importance. It is favorable rather than prejudicial to the bank, which has the benefit of the funds in the mean time. To hold that the certificate is simply an admission that the drawer’s account is good at the moment of making the certificate, would deprive the transaction of any serviceable meaning or beneficial operation, as he might immediately draw out his funds, and then negotiate the check. The object of a dealer, in procuring his check to be certified, is to enable him to obtain credit with others who might not be willing to trust to his personal repre *625 sentation of the existence of funds to meet the draft, or his assurance that he would not withdraw them to the prejudice of the holder. This effect, belonging to certified checks, enables them to be extensively used in payments and settlements at the place where they are drawn, and to a more limited extent as remittances to other places. In a legal aspect they are bills of exchange, the bank on which they are drawn being the drawees, and after they are certified the acceptors. Like other mercantile paper, they have the quality of negotiability by indorsement or delivery, as the case may be, with the well known effect.of giving to the endorsee a right in certain cases to recover against the acceptors, where the primary party would have no such right. So far, I believe, we all agree in opinion. The difficulty arises upon the question, whether the certificate upon these checks is an act by which the defendants are bound The evidence at the trial was full and uncontradicted, that the defendants were in the practice of certifying the checks of those who had funds on deposit in the manner that the checks in question were certified, and that the act of certify ing in such cases was intrusted to the teller. He had before him a book in which it was his duty to keep an account of the certified checks. It was no part of his duty, and he had no authority to bind the bank, by any undertaking, for the accommodation of any person, "whether a dealer or not, In certifying these checks he committed a fraud upon the defendants, although Green, at whose instance he did ft, promised not to pass them off, but to return them. In the hands of Green the checks were unavailable, and if the defendants, are liable, that liability grows out of the law respecting commercial paper. In my opinion, that l'aw applies directly to this case. A Iona fide holder of' negotiable paper can, in many cases, recover against the maker or acceptor, where the note or bill would have been void in the hands of the payee. The case of a want of consideration between the several parties, is a familiar application of the *626 principle. The law requires a consideration to support, a • Mil or note, equally with any other simple, contract. The only difference between the cases is, that as to mercantile paper a. consideration is in the first instance presumed; but the presumption yields to evidence of the absence of consideration, and when such proof can be given and the controversy is between the original parties, the law adjudges that no contract exists; and it is only for the sak.e of sustaining the validity of paper calculated to circulate in community, and to pass from hand to hand by indorsement and delivery, that the Iona fide holder is, protected. In order to sustain the negotiability of such paper, a contract is held to exist where none was in fact made. The maker of the paper, who, by his negligence, has suffered it to pass into circulation, is, upon motives of policy, precluded from alleging the fact which would in other cases avoid the alleged contract.
I have alluded to this class of cases, to show that the principle of the law merchant which I am considering, is not limited in its application to cases where the defence admits the existence of an original valid bill, but that it ■ extends to cases where the maker, is charged upon a contract which owes its existence to the intervention of a ■ Iona fide holder. It has been argued, that this principle does not apply where the question relates to the execution of the paper sought to.be enforced, and this is generally true. A forged bill or note of course derives no validity from being passed to an innocent holder; and where a bill is accepted by procuration and the power of attorney only authorizes the acceptance of bills drawn by parties sustaining a . certain relation to. the constituent, it has been decided in one case that the holder must show that the bill which he seeks to enforce, was drawn, by such a party. (Attwood v. Munnings, 7 Barn. & Cres., 278.) In this case, there was. nothing upon the. face of the bill, which showed that it was of the description contemplated by the power *627 The authority was to accept such bills as should be drawn upon the constituent by his agents or correspondents.. The bill did not purport to be drawn by such parties, and was, in fact, drawn by a partner of the constituent to raise money for the firm. The plaintiff was bound to ascertain the extent of, the power, and when he found it to be special he was put upon inquiry whether- the bill which was offered to him came within the class contemplated. In-the case under consideration, the plaintiff was chargeable with knowledge that the power of the teller- to certify checks was confined to such as should be drawn by parties having money on deposit. But the certificate did state that the drawer was such party. It declared that the check was good for the amount, which was only a short method of stating that his account was sufficient- to enable him to draw the check. In that respect it was-essentially different from the bill which was under- consideration in Attwood v. Munnmgs. The fact thus authenticated was one peculiarly within the knowledge of the defendants, and the teller was a person appointed by them to create evidence on their behalf of that fact. By authorizing their teller to issue certified checks, negotiable in their form and in effect, they authorized him in that authentic method to hold out and to affirm to any party who might have occasion to deal on the faith of funds alleged to be on deposit with them, the existence of such funds, and moreover to promise for them that such funds should not be diverted before the check should be presented. If the case referred to covers such a case as the one under consideration, it is hostile to principles well settled in the courts of this state. It is a familiar principle that, in a copartnership firm, each of the partners is the agent of the-partnership, as to all matters within the scope of the partnership business, and can bind them effectually by making, indorsing and accepting bills and notes in such business. But he has no more authority than a mere stranger to make them a party to0paper issued in his *628 own business or for the accommodation of another person. If he gives the partnership note or acceptance for his own debt, it is void in the hands of the payee, who is necessarily 'cognizant of the consideration; but when such a note or bill is negotiated to a bona fide holder, the firm is precluded from questioning the authority of the partner, and is effectually bound. The cases by which this doctrine is established and illustrated axe constant and very numerous. (Livingston v. Hastie, 2 Caines, 246; Lansing v. Gaine, 2 John., 300; Laverty v. Burr, 1 Wend., 529; Williams v. Walbridge, 3 id., 415; Boyd v. Plumb, 7. id., 309; Gansevoort v. Williams, 14 id., 133; Joyce v. Williams, id., 141; Wilson v. Williams, id., 146; Stall v. Catskill Bank, 18 id., 466; S. C., 15 id., 364,) The reason why the firm is not. bound to the primary party is that the authority of the executing partner did not extend to the case. Judge Bronson, in one of the cases, remarked that it had been contended that the question of fraud on the part of the plaintiffs should have been submitted to the jury, but he said: “ It is not a question of fraud, but of contract. Has Johnson [the partner who defended] ever-agreed to pay these' notes ? Williams [ the partner who indorsed them in the name of the firm] had no authority to bind him; and if Johnson has not himself, assented to the obligation, there is an end of the question. Good faith on the part of the plaintiffs cannot subject a third person who has never dealt with them to. any liability.” (Wilson v. Williams.) In another case, Judge Nelson said: “We hold that the fact of the paper of the firm ■ being given out of the partnership business by one member is presumptive evidence of want of authority to bind the other members of the firm ; and if the person taking it knows the fact at the time, he is chargeable with notice of want of authority and guilty of concurring in an attempted fraud .'upon the other partner.” (Gansevoort v. Williams.) He said that the reason why the other partners were bound to a bona fide *629 holder was founded upon the law merchant, by which he meant the policy of the. law of negotiable paper. In Stall v. The Catskill Bank, in the court of errors, the chancellor said that the principle of this class of cases is this: “ That it is no part of the ordinary business of a mercantile firm to make or indorse notes as the sureties for third persons, or to pay the private debts of the individual partners, and of course there is no implied authority for one member to indorse or affix the name of the firm to negotiable paper in which the partnership has no interest for such purposes.” The principle of these cases seems to me to apply precisely to the one under consideration. In both instances the agent going beyond his delegated power, makes ah instrument which cannot be distinguished from one made in performance of the power, and that instrument has the attributes of negotiable paper. It is, nevertheless, void in the hands of the original party, and every other person standing in his place; but valid in the hands of a Iona fide holder, upon the principles of the law merchant.
The case of The State of Illinois v. Delafield (8 Paige, 527; S. C. in error, 2 Hill, 159) is another illustration of the same principle. An agent of the State of Illinois was authorized to dispose of certain bonds prepared for the purpose of obtaining a state loan. He was not to sell them below pal- or on credit; but he disposed of them, to Delafield, below par and on time, and the state filed a bill for relief against Delafield and applied to the Court of Chancery for "an injunction to restrain the defendant from further negotiating the bonds. Unless Delafield could transfer them so as to give the holder a better title than he had, an injunction would be unnecessary, and it was on the ground that he might do so that the preventive process was applied for.
The case was argued at great length by very distinguished counsel. The defendant’s counsel, among whom was the late Daniel Webster, insisted that if the bonds were void in .the defendant’s hands they would be in. the hands of any *630 person to whom he might transfer them. On the other side it Was contended that, being transferable by delivery, a subsequent purchaser in good faith could lawfully claim their payment against the state. The chancellor granted the injunction, saying that if the securities should pass into the hands of bona fide holders the state would be legally and equitably bound to pay them to such holders. On an appeal from the order to the court for the correction of errors, the question was again elaborately discussed at the bar, and the order was affirmed by a nearly unanimous vote, Mr. Justice Bronson” delivering the only opinion which has been published. Upon the point under Consideration he said: “ The bonds are negotiable instruments, the title to which Will pass by mere delivery, and although void in the hands of the appellant, Delafield, they will be valid securities in the hands of a Iona fide holder.” Both courts held the bonds to be void in the hands of Delafield. That this description of securities have the incidents of commercial paper has been repeatedly decided. (Wookey v. Pole, 4 Barn. & Ald., 1; Gorgier v. Mieville, 3 Barn. & Cress., 45.) In the last case a •Prussian bond, part of the public debt of that country, was held to have all the qualities of commercial paper. Chief Justice Abbott said: “It is in its nature precisely analogous ijo a note payable to bearer or to a bill of exchange indorsed" in blank.” I am unable to see any distinction between the case of The State of Illinois v. Delafield and the one at bar. The agent, in the case cited, issued the bonds, which had no inception until they passed out of his hands, in a case not within his power, and therein exceeded the authority with which he was clothed by the state. They Were void in the hands of Delafield, but because he might give them efficacy by passing them to an innocent holder, the injunction was awarded, and that judgment was affirmed b.y the court of errors. The case of Stoney v. The American Life Insurance 'Company (11 Paige, 635) is so’reported, the facts not being stated, that it is difficult to say what questions *631 arose. One branch of the reporter’s note is as follows: “A negotiable security of a corporation, which upon its face appears to have been duly issued by such corporation and in conformity with the provisions of its charter, is valid in the hands of a bona fide holder thereof, without notice, although such security was in fact issued for a purpose and at a place not authorized by the charter of the company and in violation of the laws of the- state where it was actually issued.” I should entertain doubts as to the correctness of the last portion of the note, but so far as it affirms that a bona fide holder would not be prejudiced by the fact that the paper was issued in a case simply unauthorized by the charter, it corresponds with my views of the law and is applicable to the present question, it being understood that all the officers of a corporation, from the directors down, are but agents of the body corporate which they represent. Safford v. Wyckoff, in the court of errors (4 Hill, 442), was decided upon a doctrine which gives efficacy to bills and notes in the hands of a bona fide holder which would have been void if not negotiated. The opinion of the chancellor is to the effect that banking associations have a right to issue negotiable paper only for certain limited purposes, but if they issue such paper for other purposes, which is not on its face illegal or unauthorized, it is valid in the hands of an innocent holder, unless the particular security is made void by statute.
The case of The North River Bank v. Aymar (3 Hill, 262)., is conceded on all hands to be directly in point, and if sound law, to be conclusive in favor of the plaintiffs in this case. The prevailing opinion of Mr. Justice Cowen is an able exposition of the views I have been endeavoring to maintain. But the judgment is said, and I believe truly, to have been reversed by the court of errors; though neither the decision of that court nor the opinion of any of the members has ever been published. I have elsewhere stated my sense of the confidence which ought to be given to the *632 judgment of the court of final appeal. Though theoretically only evidence of the law, and not the law itself, t;.ie cases are extremely rare in which it would be proper to reexamine questions deliberately decided in that court; when published for the use of the community and the legal profession, they become precedents in which business men and all the subordinate tribunals confide, without doubt or hesitation. This is not because such a court may not commit error as well as other courts, but because disputés and doubts upon legal questions must be resolved somewhere, in order that a rule may be established upon which the public may safely act. These considerations do not prevail with the same force where the judgment, which would otherwise form a precedent, has never been published. Very few persons resort to the manuscript records of our courts; and these records, when examined, do not contain any intelligible statement of the points of law adjudged. Oral tradition may preserve the knowledge of a particular judgment among a few persons for a limited period ; but for all practical purposes, the new rule introduced by an unpublished decision, is unknown to the public. The reason for withholding from the unpublished judgment the consideration which would otherwise belong to it as a precedent, is stronger where it overturns the principle of a judgment published in the regular series. of reports. The reported decision stands in the books as an apparent authority for the decision of subsequent cases, is abstracted into digests, referred to in other reported cases, as has actually been done in the present instance. (Clinton’s Dig., 1206, pl. 87; 1 Sandf., 276.) In such a case, I feel no hesitation in reexamining the question supposed to have been decided in the appellate court; and I am clearly of opinion that the case of The North River Bank v. Aymar, was correctly adjudged in the supreme court. If. the court of errors laid down a different rule in reversing that j udgment, they ran counter, as I think I have shown, to a strong course of adjudication in that court and in tho *633 supreme court, and overturned a legal position which was then well established in this state, and has since been repeatedly acted upon.
The cases of Grant v. Norway (10 Com. Bench, 665); Coleman v. Riches (29 Eng. L. and Eq. R., 323); Hubbersty v. Ward (8 Exch., 330), and the case of The Mechanics' Bank v. The New-York and Neiv -Haven Railroad Company, lately decided in this court, are distinguishable from the present. Neither of the instruments upon which it was sought to charge the defendants in those cases were negotiable, and neither of them was within the protection which the law affords to that class of securities. As to choses in action in general, the rule is, that a party to whom they are transferred takes only the title which the seller had, and holds them subject to all defences which could be made against them in the hands of the original party. As to commercial paper, the .law, upon special motives of policy, affords, as has been already stated, a remedy to the innocent holder in many cases which the .party to the original contract had no right to claim. The present plaintiffs are, in my opinion, entitled to that protection. It may, I think, upon the authority which I have referred to, be laid down as a correct proposition, that where an agent is authorized to bind a principal by the making, acceptance or indorsement of negotiable paper, and he makes, accepts or indorses a note or bill in such a form as apparently to be within his power, and so that by comparing the power with the act alleged to be done in pursuance of it, the latter appears to be authorized, and the security is negotiated to an innocent party, who parts with value; without notice that there has been any abuse of the authority, the principal is bound, though it be shown that the paper was given in a case or for a purpose to which the authority did not extend. A contrary rule would destroy all confidence in paper issued by the officers and servants of a corporation. These artificial persons, through which a very large portion of the *634 business of the country is transacted, act wholly by agents. They are, as has been said, an existence made up of agents. It is of no importance, in a leg„al point of view, whether the officer employed in a given case is a superior officer, 01 like the teller in this case, a subordinate servant of the corporation. They are alike agents, from the directors down to the lowest clerk, and none of them can rightfully bind the corporate body by an act to which their authority does not extend. A large proportion of the moneyed securities which they habitually issue, belong to this class of 'commercial paper, and are designed for negotiation, and would not answer the purpose for which they are issued without possessing the quality of negotiability. The banks, for instance, very generally issue certificates of deposit, payablé to bearer or to order, which are in effect promissory notes. They Universally sell exchange by drawing upon other similar institutions, and these drafts are * negotiable bills of exchange. Upon the theory of the defence in this suit, á party desirous of becoming the holder of a certificate of deposit or bill of exchange, would have to inquire not only as to the genuineness of the signature of the officers, and the powers which they were accustomed, with the assent of the directors, to exercise, but also whether in the particular case, the party to whom the paper was issued had paid value for it, so that, the act of the officer or clerk who executed it had, in that instance, been faithful to his employers. A good many corporations, such as railroad companies and municipalities, are authorized to borrow upon their obligations, transferable by delivery or by indorsement; but if the. defendant’s position is correct, the innocent holders of these instruments would assume the hazard :of their having been issued for value paid into the treasury of the corporation; for none of the officers of these corporate bodies, I presume, are authorized to issue them in any other case. In all these cases the rule applies, that where one of two innocent parties is obliged to suffer on account of the misconduct of *635 another} the party who entrusted that other should bear the loss. It is reasonable to require a party proposing to purchase such securities, to ascertain in the first instance whether the instrument is entitled to the immunities of negotiable paper; and whether the same, if duly issued, is warranted by a general or particular law. Having ascertained these facts, and that the signatures of the officers and agents are genuine, and that they are the proper officers to authenticate by their signatures that description of paper when issued by the corporation in a proper case, they may safely consummate the transaction without inquiring whether the original payee had. paid value, or in any other way entitled himself to have such paper issued to him.
These considerations have led me to the conclusion that the judgment appealed from ought to be affirmed.
The court made no decisions at March term, 1857.